IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACK R. YARBROUGH,                        3:14-cv-01453-BR

       Plaintiff,                        OPINION AND ORDER

v.

FIRST AMERICAN TITLE INSURANCE
COMPANY and FIRST AMERICAN
CORPORATION,

       Defendants.
_____

FIRST AMERICAN TITLE INSURANCE
COMPANY and FIRST AMERICAN
CORPORATION,

       Counterclaimants,

v.

JACK R. YARBROUGH,

       Counterclaim Defendant.

**WILLIAM L. GHIORSO**
The Ghiorso Law Firm
495 State Street, Suite 500
Salem, OR 97301
(503) 362-8966

          Attorney for Plaintiff-Counterclaim Defendant

**C. CLAYTON GILL**
**TYLER J. ANDERSON**
Moffatt Thomas
P.O. Box 829
Boise, ID 83701-0829
(208) 345-2000

          Attorneys for Defendants-Counterclaimants


**BROWN, Judge.**

        This matter comes before the Court on the Motion (#32) for

Summary Judgment filed by Defendants First American Title

Insurance Company and First American Corporation and Plaintiff's

Motion (#37) for Partial Summary Judgment.  The Court heard oral

argument on September 14, 2015.  With the submission of

supplemental briefing, the Court took the matter under advisement

on September 28, 2015.

        For the reasons that follow, the Court **GRANTS** Defendants'

Motion for Summary Judgment, **DENIES** Plaintiff's Motion for

Partial Summary Judgment, and **DISMISSES** this matter **with

prejudice.**[1]

_____

        [1] Defendants also filed Objections (#38) to Evidence Offered
by Plaintiff in which Defendant seeks to exclude portions of the
Declaration (#36-2) of Richard Stacey that Plaintiff filed as an
attachment to his Response (#36) to Defendant's Motion for

2 - OPINION AND ORDER

**<u>BACKGROUND</u>**

The following facts are undisputed and taken from the record on summary judgment:

In 2007 PremierWest Bank made a loan to Idaho Waste Systems, Inc., (IWS) that was secured by a deed of trust on property in Elmore County, Idaho.  The maximum lien amount on the property was $5,000,000.  Defendants issued a title-insurance policy in the amount of $5,000,000.

In 2010 Plaintiff purchased the loan from PremierWest Bank and was assigned the Bank's note, all related loan documents, the beneficial interest in the deed of trust securing the debt, and the lender's policy of title insurance (collectively referred to herein as the Policy).

Endorsement 110.5, which was contained in the Policy, provides the Policy

> insures the owner of the indebtedness secured by the insured mortgage against loss or damage, which the insured shall sustain by reason of . . . [t]he failure of that certain agreement executed by Idaho Waste Systems, Inc.[,] dated May 18, 2010[,] and recorded July 21, 2010[,] as Instrument No. 415544 to modify the insured mortgage or the obligation secured thereby.

The agreement referenced in Endorsement 110.5 is the Modification of Deed of Trust in which the original deed of trust was modified

---

Summary Judgment.  Because the evidence that Defendants object to is not relevant to the resolution of the parties' Motions for Summary Judgment, the Court **OVERRULES as moot** Defendants' Objections.

3 - OPINION AND ORDER

to reflect that the amount owing on the promissory note was increased to $4,200,000.00.  In addition, the Policy extends insurance coverage to loss or damage incurred as a result of

> the invalidity or unenforceability of the lien of the Insured Mortgage upon the Title.  This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage
>
>> (a) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
>>
>> (b) failure of any person or Entity to have authorized a transfer or conveyance;
>>
>> (c) the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered; [and]
>>
>> (d) failure to perform those acts necessary to create a document by electronic means authorized by law.

The Policy also provides Defendants "shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured.  This obligation is limited to only those stated causes of action alleging matters insured against by this policy."

On May 13, 2014, Plaintiff filed an action in Elmore County seeking to recover past-due amounts owed under the loan and to foreclose the deed of trust.  Together with its answer in that action, Idaho Waste asserted 21 affirmative defenses, three crossclaims, and a counterclaim.

On July 7, 2014, Plaintiff sent a written request to

Defendants to provide for the defense of "affirmative defenses challenging the validity of certain loan modifications and assignments which are covered by endorsements issued by First American Title."  Plaintiff did not request Defendants to provide a defense as to the counterclaim.

On July 23, 2014, Defendants tendered a defense as to the fifteenth and sixteenth affirmative defenses under a "full and complete reservation of rights."  Plaintiff responded, however, that he believed the Policy also provided coverage for the second, fourth, fifth, sixth, eighth, and nineteenth affirmative defenses.

On September 10, 2014, Plaintiff initiated this action in which he brings claims against Defendants for breach of contract and breach of the implied duty of good faith and fair dealing. In his Complaint Plaintiff alleges Defendants have a duty to "defend" under the Policy as to the following affirmative defenses:

> **Second Affirmative Defense**:  This Defendant IWS (Idaho Waste Solutions) asserts that it has rights pursuant to the provisions of Idaho Code § 6-101 together with potentially applicable additional provisions of the Idaho Code relating to real estate mortgage foreclosure that bars all or a portion of the claims asserted by the Plaintiff in this litigation.

> **Fifth Affirmative Defense**:  The Plaintiff has failed to establish and has the obligation to prove that it is the lawful holder of the Promissory Note, which forms the basis for the claims asserted and relief sought in the Plaintiff's Complaint.

**Sixth Affirmative Defense**:  The Plaintiff has the burden of establishing that the loan transactions referred to in the Plaintiff's Complaint and the issuance of any security documentation regarding any such loan transactions was issued by individuals having authority to act by, on behalf, and with the authority of IWS.

**Eighth Affirmative Defense**:  The 2010 loan transaction is unenforceable, in whole or in part, due to a lack of or failure of consideration.

**Ninth Affirmative Defense**:  The 2010 loan transaction is unenforceable, in whole or in part, due to the conduct of the Plaintiff, in concert with third parties, that resulted in financial detriment to IWS.

**Twelfth Affirmative Defense**:  The 2010 loan transaction is unenforceable, in whole or in part, due to the misappropriation of corporate funds in which the Plaintiff participated.

**Thirteenth Affirmative Defense**:  The 2010 loan transaction is unenforceable, in whole or in part, due to the usurpation of corporate funds in which the Plaintiff participated.

**Fourteenth Affirmative Defense**:  The 2010 loan transaction is unenforceable, in whole or in part, since the Defendant IWS did not receive the benefit of the bargain that was contemplated by the transaction.

**Seventeenth Affirmative Defense**:  The 2010 loan transaction is unenforceable, in whole or in part, since the transaction was unconscionable and the obligations it imposed were unconscionable.

In their Answer (#17) Defendants bring a Counterclaim against Plaintiff in which they seek a declaration that Defendants do not have a duty to defend Plaintiff in the Idaho state-court case as to the first through fourteenth and seventeenth through twenty-first affirmative defenses.

**STANDARD**

Summary judgment is appropriate when there is not a "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.*  "This burden is not a light one . . . .  The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*,

381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)(citing *Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir. 1989)). *See also Moore v. Potter,* 701 F. Supp. 2d 1171 (D. Or. 2010). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka,* 581 F.3d 1127, 1137 (9th Cir. 2009)(citing *Blue Ridge Ins. Co. v. Stanewich,* 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.,* 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## DISCUSSION

Defendants contend they are entitled to summary judgment on the grounds that (1) they did not owe Plaintiff any duty to defend in the underlying litigation because Idaho Waste's

affirmative defenses were not "claims" within the meaning of the Policy; (2) even if a duty to defend existed, Defendants satisfied that duty by tendering a defense for affirmative defenses fifteen and sixteen; and (3) assuming Defendants breached their duty to defend, there are not any damages that have arisen from that breach.

Plaintiff contends Defendants are not entitled to summary judgment and, in fact, that Plaintiff is entitled to summary judgment as to breach of the insurance contract because Defendants breached their duty to defend as set out in the Policy when they only tendered a defense of affirmative defenses fifteen and sixteen.

Under Idaho law, which the parties agree controls this case, an insurer's "duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a potential for liability that would be covered by the insured's policy." *Hoyle v. Utica Mut. Ins. Co.*, 137 Idaho 367, 371-72 (2002). *See also AMCO Ins. Co. v. Tri-Spur Inv. Co.*, 140 Idaho 733, 737 (2004). The *Hoyle* court noted:

> Where there is doubt as to whether a theory of recovery within the policy coverage has been pleaded in the underlying complaint, or which is potentially included in the underlying complaint, the insurer must defend regardless of potential defenses arising under the policy or potential defenses arising under the substantive law under which the claim is brought against the insured.

*Hoyle*, 137 Idaho at 372 (quoting *Kootenai County v. W. Cas. and*

9 - OPINION AND ORDER

*Sur. Co.*, 113 Idaho 908, 910 (1988)).  "'Because insurance contracts are adhesion contracts, typically not subject to negotiation between the parties, any ambiguity that exists in the contract must be construed most strongly against the insurer.'" *Weinstein v. Prudential Prop. and Cas. Ins. Co.*, 149 Idaho 299, 321 (2010)(quoting *Armstrong v. Farmers Ins. Co. of Idaho*, 147 Idaho 67, 69 (2009)).  Nonetheless, the allegations must raise a potential basis for liability on the face of the complaint because "an insurer does not have to look beyond the words of the complaint to determine if a possibility of coverage exists." *Hoyle*, 137 Idaho at 373.

In order to conclude that the Policy required Defendants to defend Plaintiff in the underlying litigation, the Court must (1) find the allegations in the affirmative defenses fall within the scope of the Policy, and, if so,(2) conclude Defendants had a duty to "defend" Plaintiff against the affirmative defenses.

The parties focus on Endorsement 110.5, which, as noted, provides the Policy

> insures the owner of the indebtedness secured by the insured mortgage against loss or damage, which the insured shall sustain by reason of . . . [t]he failure of that certain agreement executed by Idaho Waste Systems, Inc.[,] dated May 18, 2010[,] and recorded July 21, 2010[,] as Instrument No. 415544 to modify the insured mortgage or the obligation secured thereby.

Plaintiff contends the affirmative defenses raised in the underlying litigation fall within the scope of Endorsement 110.5

10- OPINION AND ORDER

because the Endorsement insures Plaintiff against loss sustained
by reason of the failure of the modification of deed of trust
agreement to modify the original deed of trust.  Specifically,
Plaintiff contends the affirmative defenses in the underlying
litigation raise the issue as to whether the parties to the
original loan agreement (including the agreement to modify the
original deed of trust) were properly authorized to enter into
such agreement on behalf of IWS.

Reading broadly both Endorsement 110.5 and IWS's answer in
the underlying litigation, the Court agrees with Plaintiff that
at least affirmative defenses six, eight, nine, twelve, thirteen,
fourteen, and seventeen may implicate the validity of the
modification of deed of trust and, therefore, its ability to
modify the "insured mortgage or the obligation secured thereby"
because those affirmative defenses implicate the enforceability
of the "loan transaction."  Although the Court notes there is
considerable ambiguity in Endorsement 110.5, any such ambiguity
"'must be construed most strongly against the insurer.'"
*Weinstein*, 149 Idaho at 321 (2010)(quoting *Armstrong*, 147 Idaho
at 69).  Accordingly, on this record the Court concludes
affirmative defenses six, eight, nine, twelve, thirteen,
fourteen, and seventeen fall within the substantive scope of the
insurance contract.

Nonetheless, Plaintiff's contention that Defendants had a

duty to defend Plaintiff in the underlying litigation suffers
from a more fundamental defect:  Defendants had nothing to defend
Plaintiff against.

As noted, the Policy requires Defendants to "*provide for the
defense* of an Insured in litigation in which any third party
asserts a claim covered by this policy adverse to the Insured.
This obligation is limited to only those stated causes of action
alleging matters insured against by this policy."

Relying on *Philadelphia Indemnity Insurance Co. v. Chicago
Title Insurance*, Defendants contend they do not owe Plaintiff a
duty to defend because "[a]n affirmative defense is not a
'claim'" (771 F.3d 391, 401 (7th Cir. 2014)), and, unlike
counterclaims, "affirmative defenses are liability avoidance
measures that are not designed to create liability, but merely to
avoid it."  Def.'s Mem. in Supp. (#32) at 14.  *See also
Philadelphia Indem. Ins. Co.*, 771 F.3d at 401.  Thus, because
Plaintiff only requested Defendants to defend him in relation to
the affirmative defenses pled by Idaho Waste Systems, Defendants
contend they did not owe any duty to defend Plaintiff in the
underlying litigation.

Plaintiff, on the other hand, relies on language from
*Philadelphia Indemnity Insurance* that suggests "[p]erhaps an
affirmative defense in a foreclosure action might be functionally
characterized as a counterclaim to the extent that it alleges a

defect in title or lien priority or some other title risk
potentially covered by the title policy." 771 F.3d at 402.
Plaintiff contends that is the case here because the "affirmative
defenses are functionally equivalent to claims" in that the
affirmative defenses allege defects in the loan documents that
would render those documents invalid and, therefore, also
invalidate the associated lien. As a result, Plaintiff contends
affirmative defenses two, five, six, eight, nine, twelve,
thirteen, fourteen, and seventeen trigger Defendants' duty to
defend.

Although the Court notes there is not any Idaho law directly
on point, the Court finds persuasive the Seventh Circuit's
reasoning in *Philadelphia Indemnity Insurance*. Absent language
to the contrary in the insurance contract, under normal
circumstances an insurer's duty to *defend* an insured is not
implicated when the insured is a plaintiff in an action in which
a defendant pleads an affirmative defense that relates to subject
matter that may otherwise fall within the scope of coverage. *See
Philadelphia Indem. Ins. Co.*, 771 F.3d at 401. *See also P.J.P.
Mechanical Corp. v. Commerce and Indus. Co.*, 882 N.Y.S. 2d 34,
36-39 (N.Y. App. Div. 1 Dep't 2009); *CDM Investors v. Travelers
Cas. and Sur. Co.*, 43 Cal. Rptr. 3d 669, 680-82 (Cal. App. 6th
Dist. 2006)("[U]nder ordinary duty-to-defend language, an insurer
has no duty to defend an affirmative defense asserted against the

insured in an insured-initiated action," but a setoff affirmative defense could implicate a duty to defend if the affirmative defense "(1) would unquestionably have been a suit for damages if asserted in a court of law, and (2) fell within the scope of the contractual obligation."). In other words, even construing the Policy as broadly as possible, the Court cannot conclude Defendants' obligation under the Policy to "provide for [Plaintiff's] defense" also imparted on Defendants an obligation to provide for the prosecution of a portion of Plaintiff's state-court foreclosure action.

Moreover, the principle that a true affirmative defense does not trigger a duty to defend is consistent with the Idaho Supreme Court's statement in *Hoyle* that a duty to defend is triggered when the allegations in the complaint "reveal a potential for liability that would be covered by the insured's policy." 137 Idaho at 371-72 (emphasis added). Thus, as noted, absent language to the contrary in the insurance policy, an affirmative defense raised in opposition to a suit initiated by the plaintiff insured does not trigger the insurer's duty to defend unless that affirmative defense "reveal[s] a potential for liability" on the part of the insured plaintiff in that action. *See id.* As noted, there is not any indication that any of the affirmative defenses pled by IWS raise a potential of liability for Plaintiff in the underlying litigation.

On this record, therefore, the Court concludes Defendants do not owe a duty to "defend" Plaintiff in the underlying litigation.


## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#32) for Summary Judgment and **DECLARES** Defendants do not have a duty to defend Plaintiff in the underlying litigation; **DENIES** Plaintiff's Motion (#37) for Partial Summary Judgment; and **DISMISSES** this matter **with prejudice**.  The Court also **OVERRULES as moot** Defendants' Objections (#38) to Evidence Offered by Plaintiff.

IT IS SO ORDERED.

DATED this 23rd day of November, 2015.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge